Samuel R. Watkins (SBN 272162)
swatkins@thompsoncoburn.com
THOMPSON COBURN LLP
2029 Century Park East, Suite 1900
Los Angeles, California 90067
Tel: 310.282.9451/Fax: 310.282.2501

-and-

Jordan A. Sigale (Ill. ARDC No. 6210047) -Admitted *pro hac vice*
jsigale@dunlapcodding.com
Julie Langdon (Ill. ARDC No. 6291722) – Admitted *pro hac vice*
jlangdon@dunlapcodding.com
**DUNLAP CODDING PC**
225 West Washington St., Ste. 2200
Chicago, IL 60606
Tel: 312.651.6744

-and-

Douglas J. Sorocco (Okla. Bar No. 17347, Ill. ARDC No. 2381747)
Admitted *pro hac vice*
dsorocco@dunlapcodding.com
Evan W. Talley (Okla. Bar No. 22923)
Admitted *pro hac vice*
etalley@dunlapcodding.com
**DUNLAP CODDING PC**
609 West Sheridan Avenue
Oklahoma City, OK 73102
Tel: 405. 607.8600

**Attorneys for Plaintiff BARBARO TECHNOLOGIES, LLC**

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION (LOS ANGELES)**

| | |
|---|---|
| BARBARO TECHNOLOGIES, LLC, a Delaware Limited Liability Company;<br><br>Plaintiff,<br><br>v.<br><br>NIANTIC, INC., a Delaware Corporation;<br><br>Defendant. | Case No. 2:18-cv-00773-CBM-E<br><br>**DECLARATION OF JORDAN A. SIGALE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**<br><br>Judge: Honorable Consuelo B. Marshall<br>Courtroom: 8B, 8th Floor |

I, Jordan A. Sigale, hereby declares as follows:

1. I am an attorney at Dunlap Codding, P.C., and counsel for Barbaro, Technologies, LLC ("Barbaro"). I am admitted to practice in the State of Illinois, and have been admitted pro hac vice in this district. I submit this declaration in support of Plaintiff's Opposition to Defendant's Motion to Transfer pursuant to

28 U.S.C. § 1404(a). I have personal knowledge of the facts set forth below.

2. John Zhu, counsel for Niantic, Inc., called me on March 21, 2018 to determine whether Barbaro would agree to move this action to the Northern District of California. I responded that I would need to confer with my client to determine whether Barbaro would agree to move the action.

3. On March 22, 2018, I spoke to Mr. Zhu by phone and explained that Barbaro was not interested in moving the litigation to the Northern District of California, and provided specific reasons that Barbaro would not agree to move the case, and why it preferred the Central District of California.

4. During the March 22, 2018 call, I stated that one of the reasons that Barbaro was uninterested in moving the action was that the Central District of California is currently less crowded and as a shorter time to trial than the Northern District of California. (Exhibit 1). Specifically, based on 2017 reporting, the case load per judge in this district is 442, and the time to trial is 19.6 months for civil cases. In contrast, the Northern District of California, has a case load per judge of 657, and the time to trial is 26.7 month. *Id*.

5. During the March 22, 2018 call, I also pointed out that trial travel expense (flight and hotel) is less expensive in Los Angeles for Barbaro. (Exhibit 2).

6. Also, I stated that because most of Niantic's employees and other

witnesses likely live outside of San Francisco, Barbaro did not believe that Niantic would not accrue hotel costs even if trial was held in San Francisco; rather, it is likely Niantic will put their witnesses in hotel rooms close to the courthouse to avoid traffic delays. Thus, Barbaro did not believe that travel expense would in fact be significantly less for Niantic in the Northern District of California.

7. Also, during the March 22, 2018 call between myself and Mr. Zhu, I stated that Barbaro agreed to hold the depositions of Niantic's employees in San Francisco, unless those employees were based in Los Angeles. (Based on information set forth in Niantic's Motion that some potential employee-witnesses are based in Bellevue, Washington; Tokyo, Japan; and Tucson, Arizona, Barbaro agrees to hold depositions of employees at the Niantic office most convenient to their residence.)

8. Lastly, during the March 22, 2018 call, I asked Mr. Zhu to let me know whether information that we uncovered pre-filing that suggested that Niantic located its application servers in Los Angeles was correct. To date, Mr. Zhu has not provided the answer to this question.

9. Prior to filing the Complaint in this action, my colleagues and I at Dunlap Codding ascertained, through a review of public records, many of Niantic's connection to this district. The following six paragraphs reflect evidence

that supports that Niantic has various connections to this district.

10. The Niantic has an office in Los Angeles. (Exhibit 3).

11. In addition to the four LA-based engineers referenced throughout Niantic's motion, there are at least two other Niantic employees located in Los Angeles: one on the Creative Team and one in "narrative creation and game design." See, https://www.crunchbase.com/person/catherine-metzner#section-recent-news-and-activity (Exhibit 4) and http://newsroom.ucla.edu/stories/q-a-with-ucla-alumn-raza-ahmed (Exhibit 5).

12. Patents owned by Niantic, including, at least, U.S. Patent Nos. 9,604,131 and 9,226,106, are related to the technology at issue in this litigation, and name inventors that reside in this district. (Exhibits 6 and 7).

13. When we conducted our search in January 2018, Niantic was trying to hire five employees for its Los Angeles office. Now, Niantic is trying to hire six employees for its Los Angeles office, including Software Engineer, Game Development; Software Engineer Mobile; Software Engineer, Server Infrastructure; Narrative: Graphics and Look Development Artist; Narrative: Video Production and Post Production Artist; and Narrative: Writer. (Exhibit 8).

14. There are numerous published articles describing the use of Ingress and Pokémon GO by users in this district and Niantic's release of Pokémon characters and location of game features and battle locations (e.g. Ingress portals,

"PokéStops," "Poké Gyms") to directly attract and target users in Los Angeles:

a. "L.A. Becomes a Battleground in Google's Augmented Reality Game Ingress," LA Weekly, September 22, 2014, http://www.laweekly.com/arts/la-becomes-a-battleground-in-googles-augmented-reality-game-ingress-5005562 (Exhibit 9).

b. "Here's Exactly Where To Find L.A.'s Most Rare Pokemon," Los Angeles Magazine, August 8, 2016, http://www.lamag.com/culturefiles/heres-exactly-find-l-s-rare-pokemon/ (Exhibit 10).

c. "Pokemon Go at LAPL," Los Angeles Public Library Blog, August. 6, 2016, https://www.lapl.org/collectionresources/blogs/lapl/pokemon (Exhibit 11).

15. There are social media pages which are dedicated to users of Pokémon GO and Ingress in Los Angeles:

a. Pokémon GO LA Reddit Feed having 4,378 contributors/ Pokémon Trainers: https://www.reddit.com/r/pokemongola/ (Exhibit 12).

b. Pokémon GO SoCal Facebook page having 21371 members, https://www.facebook.com/groups/pokemonsocal/about/ (Exhibit 13).

c. Ingress Reddit Feed having 33,231 agents, with at least thirteen

topics relating to Ingress in Los Angeles or L.A., https://www.reddit.com/r/Ingress/search?q=Los+angeles&restrict_sr=on (Exhibit 14).

16. Besides the accused products specifically identified in the Complaint, Niantic's website identifies two additional products, one that it currently offers for sale, and the other that will purportedly be released later this year. Specifically, the Niantic Platform--offered for sale on Niantic's website--is described as "Niantic's real-world AR platform," (Exhibit 15), thus suggesting that it may also infringe one or more claims in one or both of the patents-in-suit. Niantic's website, among other sources, also discloses Niantic's plan to release an AR game, entitled "Harry Potter: Wizards Unite," later this year. (Exhibit 16; see also, https://techcrunch.com/2017/11/08/niantics-follow-up-to-pokemon-go-will-be-a-harry-potter-ar-game-launching-in-2018/). Based on the generalized description of the Harry Potter: Wizards Unite" application it may also be the basis for additional specific infringement claims.

17. Barbaro will be requesting discovery on both of these products to determine whether they are, in fact, infringing.

18. There were over 50 references cited by either Barbaro or the U.S. Patent Office during the prosecution of the Barbaro Patents, which reflected the state of the prior art prior to the invention of the Barbaro Patents, as is evidenced

by the face of U.S. Patent No. 8,228,325. (Exhibit 17). The inventors named on those references, as evidenced on the face of those references, were located throughout the world, including Massachusetts, Missouri, Israel, and Japan. There are at least seven inventors named in those cited references that resided in this district. (Exhibit 18).

19. Google has a location in Los Angeles, California (i.e. in this Judicial District). (Exhibit 19).

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct. Executed this 17th day of April, 2018, in Chicago, Illinois.

Respectfully submitted



Jordan A. Sigale