Jordan A. Sigale (Ill. ARDC 6210047)
Admitted *pro hac vice*
jsigale@dunlapcodding.com
Julie Langdon (Ill. ARDC 6291722)
Admitted *pro hac vice*
jlangdon@dunlapcodding.com
**DUNLAP CODDING PC**
225 West Washington St., Ste. 2200
Chicago, IL 60606
Tel: 312.651.6744

-and-

Douglas J. Sorocco (OK. Bar 17347, Ill.
ARDC 2381747); Admitted *pro hac vice*
dsorocco@dunlapcodding.com
Evan Talley (OK Bar 22923) Adm.*Pro hac
Vice*; etalley@dunlapcodding.com
**DUNLAP CODDING PC**
609 West Sheridan Avenue
Oklahoma City, OK 73102
Tel:    405. 607.8600

***Attorneys for Plaintiff***
***Barbaro Technologies, LLC***

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| BARBARO TECHNOLOGIES, LLC,, <br><br> Plaintiff, <br><br> v. <br><br> NIANTIC, INC., <br><br> Defendant. | **Case No. 3:18-cv-02955-RS** <br><br> **NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OF COURT'S ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS** |

- 1 -

Notice of Motion and Motion for Leave to File
Motion for Reconsideration of Court's Order Granting
Motion for Judgement on the Pleadings
3:18-CV-02955-RS

**NOTICE OF MOTION AND MOTION FOR
LEAVE TO FILE MOTION FOR RECONSIDERATION OF COURT'S ORDER
GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS**

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that pursuant to Northern District of California Civil Local Rule 7-9(b)(3), Barbaro hereby moves this Court for an order granting it leave to file a motion for reconsideration of this Court's May 21, 2020 Order Granting Motion for Judgment on the Pleadings ("Order"). As required by Civil Local Rule 7-9 of the U.S. District Court for the Northern District of California, Barbaro respectfully contends, as discussed more fully below, that the Order reflects "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order."

**MEMORANDUM OF POINTS AND AUTHORITIES**

Barbaro seeks leave to move for reconsideration of the Order because the Court oversimplified the asserted claims of the '325 Patent in finding that they (1) are directed to an abstract idea, and (2) fail to present an inventive concept. Although Barbaro disagrees with both of the Court's conclusions, it seeks leave to file a motion for reconsideration only with respect to the Court's finding that the '325 Patent fails to present an inventive concept. In that part of its Order, the Court not only reduced the asserted claims to a simplistic concept, but also--based on a miscue caused by a new argument raised in Niantic's Reply--unduly reduced Barbaro's argument relating to the technical problem solved by the asserted claims, which resulted in the Court's manifest failure to consider material facts and dispositive legal arguments presented before entry of judgment.

In particular, as set forth in the '325 Patent itself, Barbaro's Complaint and its Opposition to Niantic's Motion for Judgment on the Pleadings, the asserted claims of the '325 Patent do not claim "removing the disconnect between the user in the real world and a VTE [(virtual thematic environment)]," nor do they simply "integrat[e] information about the real world into a virtual

Notice of Motion and Motion for Leave to File
Motion for Reconsideration of Court's Order Granting
Motion for Judgement on the Pleadings
3:18-CV-02955-RS

world, i.e., a computer game." Order at 7:26 to 8:1 (citing Barbaro Response at 16) and 8:18-20. Rather, claim 1 of the '325 Patent requires, among other elements:

> (a) the **retrieval of information**, from external sources over the internet, said information including a real-world location of a user,
>
> (b) the **integration of the information (i.e., the real-world location of the user) into a 3-D VTE**, and
>
> (c) **user interaction with the 3-D VTE** as a simulated real-world interaction, depending on the user's geographical three dimensional movement through the 3-D VTE.

Claim 3 further adds to the limitations of Claim 1 that "said information includes real-time information," while Claim 6 adds to the limitations of Claim 1 that information is displayed "to a user in a mini-application within the VTE." These claimed elements form the inventive system that provides the inventive concept that satisfies the second step of *Alice* and establishes an improvement over prior art virtual reality systems by "removing the disconnect between the user in the real world and a VTE." Barbaro Response at 16.

Under Civil Local Rule 7-9, a party may seek leave to file a motion for reconsideration any time before judgment. Civ. L.R. 7-9(a). A motion for leave to file a motion for reconsideration may be made on any one of three grounds. Civ. L.R. 7-9(b)(1)-(3). Barbaro respectfully contends that the third ground, i.e., "a manifest failure by the Court to consider material facts or dispositive legal arguments presented before entry of judgment" applies here. Civ. L.R. 7-9(b)(3). The moving party may not reargue any written or oral argument previously asserted to the Court. Civ. L.R. 7-9(c). *See also Hopkins v. Bonvicino*, 2011 WL 995961, *1 (N.D. Cal. Mar. 21, 2011) (White, J.) (unpublished); *School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) ("Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law."). This Motion for Leave to File a Motion for Reconsideration is based on the record in this case to date.

- 3 -

Notice of Motion and Motion for Leave to File
Motion for Reconsideration of Court's Order Granting
Motion for Judgement on the Pleadings
3:18-CV-02955-RS

1   Barbaro has been reasonably diligent in bringing this motion for leave, as required by Civil

2   L.R. 7-9(b). The Order of which Barbaro seeks reconsideration was filed on May 21, 2020, 12 days

3   ago, which includes a federal court holiday. The local rule does not specify any particular time

4   period for filing the motion for leave. However, Barbaro respectfully submits that 12 days is

5   reasonable when compared, for instance, to 14-day time periods expressly set in other rules

6   permitting parties to object to or appeal from certain kinds of orders. *E.g.*, Fed. R. Civ. P. 72(a)

7   (objection to magistrate judge's non-dispositive pretrial orders), 23(f) (petition for permission to

8   appeal from adverse class-certification order).

9   **I.    The Court manifestly failed to consider the material fact that Virtual Worlds is
10          a term of art that necessarily refers to an environment that is not real, but is
        instead simulated on a computer system.**

11   In the lead up to its ultimate conclusion that the claims of the '325 Patent fail to present an

12   inventive concept, the Court finds as a matter of fact "that computer games were not the *original*

13   virtual worlds" because "the concept of building models of real-world locations, and integrating the

14   user's location into said models, long predates computers." Order at 8:20-22 (emphasis in original).

15   After reciting several exemplary "virtual worlds," ("architectural models of real-world locations,

16   'miniature towns' displayed at town halls or museums, board games based on world maps, or 'sand

17   tables' used by the military") the Court asserts that "each of these virtual worlds has historically

18   allowed user interaction via 'avatars' placed within the model or map." *Id*. at 8:26 to 9:3. While it

19   may seem that Niantic argued in its Reply that replicas of real-world locations were the original

20   virtual worlds [Dkt. 121 at 4:12-24], it did not. Rather, Niantic has always recognized that virtual

21   environments are necessarily computer-based. In its Responsive Brief on Claim Construction,

22   Niantic specifically asserted that "'[v]irtual environment' is a term of art that refers to an

23   environment that is not real, but is instead simulated on a computer system." Dkt. 90 at 14:19-20

24   (citing Dkt. 85-2, Wolfe Decl.¶ 46; see Ex. A, Rosenberg Tr. 21:7-12). Thus, contrary to the Court's

25   Order, by definition, problems associated with virtual [thematic] environments ***do necessarily***

26   ***address*** uniquely technical problems with computers.

27

28

Notice of Motion and Motion for Leave to File
Motion for Reconsideration of Court's Order Granting
Motion for Judgement on the Pleadings
3:18-CV-02955-RS

## II. The Court oversimplified Barbaro's asserted patent claims and, as a result, failed to consider material facts causing it to misapply *Alice*.

The Court begins its analysis of Step Two of *Alice* by claiming that "Barbaro argues the claims here necessarily present an inventive concept because they solve a uniquely technical problem: integrating information about the real world into a virtual world, i.e., a computer game." Order at 8:18-20. But that is, at best, an oversimplification of Barbaro's argument[1] that manifestly ignores the rest of the elements of the asserted patent claims in direct contravention of the *Alice* requirement to consider all of the elements of a claim, individually and as an ordered combination, when performing Step Two. 573 U.S. 208, 211 (2014). As a result of its oversimplification of the asserted claims, the Court failed to consider the claims as a whole, and as a result, failed to consider the entirety of the record and dispositive legal arguments before it.

In particular, the Court's Step Two analysis revolves around an analogy between the placement of an '"avatar"[2] into tangible "architectural models," "miniature towns," "board games" or "sand tables" and movement of that "avatar" within those tangible models, on the one hand

---

[1] After noting that the invention of the '325 Patent solved a particularly technical computer problem, Barbaro also specifically noted that asserted Claim 1 provided a solution to that problem by disclosing and claiming:

> a novel system to **retrieve a user's real-world geographic location** from sources external to the claimed system. **The retrieved information is integrated into a . . . 3-D VTE** . . . . such that the 3-D VTE includes said real-world geographic location displayed to the user, thereby **enabling the user's simulated real-world interaction**, depending on the user's geographical three-dimensional movement through the 3-D VTE.

Dkt. 120 at 1:4-9 (internal citations omitted). Barbaro further noted that Claim 3 further adds to the limitations of Claim 1 that "said information includes real-time information" while Claim 6 adds to the limitations of Claim 1 that information is displayed "to a user in a mini-application within the VTE."

[2] The use of the term "avatar" in conjunction with physical models is incorrect. An "avatar" is defined by Webster's Dictionary, in its most pertinent form, as "an electronic image that represents and may be manipulated by a computer user (as in a game)." (See Exhibit A, attached hereto).

Notice of Motion and Motion for Leave to File
Motion for Reconsideration of Court's Order Granting
Motion for Judgement on the Pleadings
3:18-CV-02955-RS

(Order 8:20-9:3), with the integration of a user's real-world geographic location[3] into a 3-D VTE and interaction of that user "with the 3-D VTE as a simulated real-world interaction, depending on the user's geographical three-dimensional movement through the 3-D VTE" on the other. Setting aside the failure of the Court's analogy to address the geographic location retrieval, real-time information, and mini-application elements of the claims, in relying on this analogy, the Court has applied meanings to the claim terms "integration" and "user interaction" that are not supported by the record.

In fact, while the Order is not clear on which "architectural models," "miniature towns," "board games" or "sand tables" were being referenced by the Court, Niantic cited Wikipedia for examples of the last three for the first time in its Reply. Dkt. 121 at 4:25-28. Setting aside the fact that Wikipedia is not part of the pleadings, all four examples (downloaded from Wikipedia on June 1, 2020 and attached hereto as Exhibits B, C, D, and E, respectively) do not appear to provide the "integration" and "user interaction" required by the asserted claims of the '325 Patent. Moreover, these examples highlight the impossibility of placing a user within a pre-computer tangible model at the user's real-world geographic location, in real-time, and displaying the real-world geographic location of the user in a mini-application within the 3-D VTE as required by the asserted claims of the '325 Patent.

Thus, even if the Court could find on the record for the Motion for Judgment on the Pleadings that problems associated with virtual environments are not uniquely technical, none of the "virtual worlds" cited by the Court (*viz.* "architectural models," "miniature towns," "board games" or "sand tables") provided claimed "integration" or "user interaction" elements as those terms are used in the asserted claims of the '325 Patent.

---

[3] According to this Court's claim construction order, "real-world geographic location" means "the non-relative, actual location in the physical world." Dkt. 85 at 2:13-15.

Notice of Motion and Motion for Leave to File
Motion for Reconsideration of Court's Order Granting
Motion for Judgement on the Pleadings
3:18-CV-02955-RS

**A. The relationship between pre-computer plastic figurines and tangible models could not provide the claimed requirement of "integrating said information into the 3D VTE".**

The Parties did not define the term "integrating [said information into the 3-D VTE]" during the claim construction proceedings. We know, however, from the language of Claim 1 that such "integration" must result in "the three-dimensional virtual thematic environment includ[ing] said real-world geographic location displayed to the user as said three-dimensional virtual thematic environment." '325 Patent at 42:48-52. The specification further teaches us about the meaning of "integration," through its discussion of the following, among other things (emphasis added):

> [T]he virtual thematic environment can interface with a GPS system, which will show the user a map showing the user's (or any other) location, and provide details down to street and house. The program will allow the user to view either real world satellite maps/street photographs, etc., or a virtual representation of the same, showing buildings, grounds, landmarks etc. The user, in a tie-in with the product placement and other information, can "hot click" on a building, for example, and information, such as description, telephone number, directions, sponsored information etc., can be provided on that building.

> **In other integrations** between real world and virtual world environments which take place in real time, real time data is downloaded by the program and provided to the user in the virtual, [sic] environment. For example, real time information, such as sports scores, stock prices, and auction information, can be provided in an appropriate manner in the virtual thematic environment (i.e., on TV screens, computer screens, by cell phone etc.). In addition, the program allows real time video to be received and viewed in the virtual environment, such as TV programs, sports games, film concerts, etc., from satellite and cable systems. Thus, in an integration of real world and virtual world environments, the user may enter a room where he can "hot click" on a radio, for example, and choose a particular radio station, and the program will allow real-time audio of that radio station to play for the user. (9:17-42)

> In another embodiment of the holographic application, a **GPS system may be connected to the computer software** of the present invention, **which would allow the user to see a change in environment as the user physically "walks" or moves a 3D representation (i.e., avatar) through the environment**. The program may initiate automatic updates to change the environment viewed by the user, as appropriate. **The GPS system can be provided in all applications for the user to access, as stated above, whether in a thematic environment on a computer screen,** or in a holographic application. (10:43-52)

Thus, integrating the real-world geographic location of a user into the 3-D VTE means interfacing with the external source of real-world geographic location to display virtual representations of the

Notice of Motion and Motion for Leave to File
Motion for Reconsideration of Court's Order Granting
Motion for Judgement on the Pleadings
3:18-CV-02955-RS

1  nearby buildings, grounds, landmarks, etc. such that the user would see a "change in environment as

2  the user physically 'walks' or moves [an avatar] through the environment." *Id*. at 10:46-48.

3       However, the "architectural models," "miniature towns," "board games" or "sand tables" of

4  record are incapable of interfacing with an external source to obtain the real-world geographic

5  location of the user. Putting that aside and taking the record in the light most favorable to the non-

6  movant Barbaro, even where the architectural models and miniature towns are in exceptionally

7  close proximity to the real-world geographic location they model they still fail to provide the user's

8  actual "non-relative, actual location in the physical world." Dkt. 85 at 2:13-15. Moreover, even

9  assuming that a user could move a figurine through the model/miniature town, there would be no

10  change in environment.

11  **B. The relationship between pre-computer plastic figurines and tangible models could not**
12      **provide the claimed requirement of a "user interacts with the 3-D VTE as a simulated**
    **real-world interaction".**

13       Although the Parties did not define the claim term "user interacts," (see, '325 Patent, 42:53-

14  55), they did agree that the term "simulated real-world interaction" would mean "situation found in

15  the physical world that is closely mimicked." Dkt. 85 at 2. With respect to this user interaction, the

16  '325 Patent discloses a number of physical world situations closely mimicked by the inventive

17  systems, including (emphasis added):

18      [T]he virtual thematic environment can interface with a GPS system, which will
19      show the user a map showing the user's (or any other) location, and provide details
    down to street and house. The program will **allow the user to view** either real world
20      satellite maps/street photographs, etc., or **a virtual representation of the same,**
    **showing buildings, grounds, landmarks etc.** (9:17-23)

21      The **user may be able to enter a building** in a thematic environment such as a store,
22      hotel, or museum and can view the surroundings as if walking through the real world
    building. (8:44-47)
23

24      [When the user is "in" a virtual store they may] be able to **choose a DVD or a CD,**
    **and make a particular video or musical selection**, and the program will show the
25      video in the virtual thematic environment and play the audio over the user's computer
    system. (8:54-58; see also, 7:33 (bookstore) and 7:43 (coffee store))

26

27

28

Notice of Motion and Motion for Leave to File
Motion for Reconsideration of Court's Order Granting
Motion for Judgement on the Pleadings
3:18-CV-02955-RS

**[I]f the avatar enters the store and speaks to a store employee** within the thematic environment, the GUI transmits the appropriate information entered by the user via a speech processing means, keyboard, or other input means, and an API, to the AI library and to the voice libraries of the thematic content for both movement, high level action, and the processing of the voice data. The GUI will transmit the information to the Thematic/Publishing Logic via an API to contact the Sponsor library. (28:21-29)

[Interaction] includes experiencing the product itself in the virtual world (i.e., **taking and reading a newspaper from a newspaper machine, or a magazine from a magazine stand, driving an automobile parked on the street, turning on a radio to listen to a particular radio station, typing into a computer, using a PDA, turning on a TV set**, flying in or piloting an aircraft, etc.). (7:56-63; 9:4-8 (interaction with static photo or poster))

the user can compete in real-time . . . with other players. . . . Each player will receive dynamic content (i.e., information in real time) based on the other players' actions. For example, the other players may be directed to **"pick someone's pocket" by "grabbing" an object from their competitor**, and may gain points by **getting to a certain location first, by opening and reading certain information first, or by "hot clicking" on an item first, to obtain points** etc. (9:44-56)

Thus, as illustrated above (and elsewhere in its specification), the '325 Patent discloses a plurality of potential user interactions within a 3-D VTE supported by the claimed invention.

The specification also provides detail of the mechanics for providing user interaction with the 3-D VTE, including (but not limited to) the following (emphasis added):

The GUI engine 201 pours in real world content rendered in HTML, XML, RDF, and/or QIE-rendering format or any content format. The user interacts completely with the GUI 201. . . . The GUI 201 also interacts or connects to the Thematic/Application Publishing Logic Libraries 203 and an object oriented database management system (ODDBM), and/or content management system. **The GUI 201 also has all the data related to the user's manipulation of the selection means, including any keyboard strokes, use of a pen, joystick, interactive goggles, touch screen, or any other interactive hardware component that would allow the user the ability to move objects, people, etc.** (15:16-29)

The server Thematic Application/Publishing/Game state component 262 maintains the state or information of the play. **If the character moves to the right and stops**, the Thematic Application/Publishing/Game state component 262 tracks the actual movements of what it took to make that character move and stop. **If the object is transformed to a different object, the component 262 tracks the steps that it took for that image to be transposed.** The Thematic Application/Publishing/Game state component 262 will maintain the exact location of where the thematic application is stopped, such that the user can return to this same spot upon the user's return to the thematic application. The Thematic Application/Publishing/Game state component 262 also maintains the imaging, data, music, voice, film, etc. for that

Notice of Motion and Motion for Leave to File
Motion for Reconsideration of Court's Order Granting
Motion for Judgement on the Pleadings
3:18-CV-02955-RS

location. However, the content may indeed change depending upon other users/players/etc. and or the update of information that has been added to or removed from the main system on the server. (21:57-22:6)

Since all the graphics reside in the Digital Content system, the graphics libraries are ready to **accept commands by the user once the user moves, or directs the avatar to move through the application**. The Digital Content library 209 maintains all the information in a content management database that is utilized when requested by the GUI 200. (27:7-12)

Thus, as the user moves the avatar down the street, the graphics library located in the Thematic/Publishing Logic Libraries 203 allows for the avatar's simple movements such as walking, turning etc. In particular, the movement of the avatar/user is generated by the GUI 200 transmitting data through a standard communications system 212 to the server 205. The data is transmitted to the QIE 211 which processes the information and sends the information to the appropriate library for processing. In this case, it is the Thematic/Publishing Logic Libraries 203 and within this layer, the Graphics application library, which is connected to the QIE 202 via the APIs 204, for example, for requests for information and processing. (27:45-57)

Thus, as the user moves throughout the thematic environment, depending on the user's access of the music, video, animation, services, etc., each of the API's are seamlessly connected to the Libraries ready to either re-calculate or utilize whatever is stored in the Digital Content system or service libraries. The commands or programming are tightly coupled with each layer and with each service. If the user selects or touches a poster, for example, the program will connect the user seamlessly to the internet site that is tied to that component for either purchase, review, or any other instruction/operation. Upon completing any task at the sponsored site, the user is then exposed to a point of returning to the thematic application to continue where they had left the program or application. The entire thematic application is an integration between the internet (WWW), Business Logic, Thematic/Publishing Logic, and QIE, and the GUI. The QIE will determine the actual output as it sends information out to the device to determine its type and to re-calculate the objects from a viewing perspective to be manipulated to that specific device. (27:58 - 28:10)

The Digital Content library maintains all the information in a content management database that is utilized when requested by the GUI. All the information in the content management database includes data, codes, binary files, web content, event notification, and other information. It may also contain scheduling directions for when the web site access and identification of where to place the web content or advertising, e-commerce, video, music, etc are to be placed. (28:12-20)

These details (and others set forth in the '325 Patent) would have disclosed to skilled artisans in 2004 the mechanics for implementing improved user interaction in virtual worlds to improve the

Notice of Motion and Motion for Leave to File
Motion for Reconsideration of Court's Order Granting
Motion for Judgement on the Pleadings
3:18-CV-02955-RS

technology that had always been simulated on computer systems. *Cf. In re Morsa*, 2020 WL 1815749, at *5 (Fed. Cir. Apr. 10, 2020)(claims found invalid because the inventor failed to "provide technological details concerning how the advertisement features are implemented to transform an abstract idea into an inventive concept.").

Having walked through the record, it should now be abundantly clear that the "architectural models," "miniature towns," "board games" or "sand tables" of record are incapable of facilitating "user interaction," as that term is used in and defined by the '325 Patent. Simply put, these "original virtual worlds" were static and, thus, incapable of providing the "user interaction" defined and disclosed by the '325 Patent.

In view of the foregoing and considering the claims as a whole, it should now be readily apparent that stretching the Court's analogy to provide even just half the functionality provided by Claim 1 of the '325 Patent, let alone that of Claims 3 and 6, would cause the analogy to breakdown. Consider, for instance, an architectural model of a house. For a person to even place a figurine in the model house in that person's non-relative, actual location in the physical world, would require the person to be standing in the living room of the house (that was used to make the model), while holding the model of the house and place the figurine in the model living room of the model house. Then, to interact with the model "as a simulated real-world interaction, depending on the user's geographical three-dimensional movement through the 3-D VTE" would require the person to hold the model and move the figurine in the model as they themselves move through the house.

This is an absurd example, of course. But one that illustrates what would be required for the asserted "original virtual worlds" to truly be analogous to the asserted claims when considered as a whole. The resulting absurdity highlights the manifest failure to consider material facts and dispositive legal arguments in the Step Two *Alice* analysis. On the flip side, this discussion further highlights Barbaro's improvement of virtual environments: removing the disconnect between the user in the real-world and the 3-D VTE by "retrieving information . . . from external sources [about] a real-world geographic location of [the] user" and "integrating said information into the 3-D VTE"

Notice of Motion and Motion for Leave to File
Motion for Reconsideration of Court's Order Granting
Motion for Judgement on the Pleadings
3:18-CV-02955-RS

1  so "that the user can experience a real world environment... which the user can move through in
2  real-time." These technological improvements of previously computerized-technology provide an
3  inventive concept that satisfies Step Two of *Alice*.

4  ## CONCLUSION

5          For the foregoing reasons, Barbaro requests permission from this Court to file a motion for
6  reconsideration.

7  DATED:  June 2, 2020                    **DUNLAP CODDING, PC**

8                                          By: */s/ Jordan A. Sigale*
                                           Jordan A. Sigale, Ill. ARDC 6210047)
9                                          Admitted *pro hac vice*
                                           jsigale@dunlapcodding.com
10                                         Julie Langdon (Ill. ARDC 6291722)
                                           Admitted *pro hac vice*
11                                         jlangdon@dunlapcodding.com
                                           225 West Washington St., Ste. 2200
12                                         Chicago, IL 60606 ; Tel: 312.651.6744

13                                         -and-

14                                         Douglas J. Sorocco (OK. Bar 17347, Ill. ARDC 2381747);
                                           Admitted *pro hac vice*
15                                         dsorocco@dunlapcodding.com
                                           Evan Talley (OK Bar 22923) Adm.*Pro hac Vice*;
16                                         etalley@dunlapcodding.com
                                           609 West Sheridan Avenue
17                                         Oklahoma City, OK 73102
                                           Tel:      405. 607.8600
18
19                                         ***Attorneys for Plaintiff***
                                           ***Barbaro Technologies, LLC***
20
21
22
23
24
25
26
27
28

Notice of Motion and Motion for Leave to File
Motion for Reconsideration of Court's Order Granting
Motion for Judgement on the Pleadings
3:18-CV-02955-RS

1

## **CERTIFICATE OF SERVICE**

2

I certify that all counsel of record is being served on June 2, 2020, with a copy of this

3

document via the Court's CM/ECF system.

4

 */s/ Jordan A. Sigale*

5

JORDAN A. SIGALE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Notice of Motion and Motion for Leave to File
Motion for Reconsideration of Court's Order Granting
Motion for Judgement on the Pleadings
3:18-CV-02955-RS